Good morning. We're happy to hear argument number 132390, Neil v. Wells Fargo. Good morning. May I please report? Jessica Carter and Chris Brown on behalf of appellants. You speak up just a little bit. Yes, I apologize. Jessica Carter and Chris Brown on behalf of appellants Jay and Erica Neil. I will be handling the breach of contract claim and Mr. Brown will be handling the remaining claims on appeal currently. Jay Neil is currently present in the court today for the record. We still can't hear you. I apologize. Can you hear me better now? I think if you speak directly into it, stand a little closer, it's going to be really good. Yeah, thank you. Jay Neil, Appellant Jay Neil, is currently present in the court today for the record. Mr. Brown will be handling all remaining counts other than the breach of contract claim, which I will be handling on opening argument. Can you hear me now? You'll have trouble making out exactly what you're saying. I'm catching about every third or fourth word myself. Is it me or is it the microphone? I apologize. I think they're turning it up on you. Okay. Okay. We're good. Okay. So if you're not successful in arguing this breach of contract, we don't need to hear from the other side, do we? No. Is that correct? If I'm not successful in arguing? We don't think there's a contract here or a breach. Do we need to reach any of the other agencies? No. If there is not a default, then essentially all of the other claims are based upon the default under the contract. So the contract is basically the foundation of our claim today. Breach of contract. The breach of contract, yes. Just to be clear, our client has asked that we assure that the court is well aware of the fact that, and one of the most important factors in this case, is that Mr. Neil had never missed a payment under his mortgage agreement, yet he was foreclosed on by Wells Fargo. So the issue is the contract. The consideration, as has been found, and by two other circuit court of appeals, the Ninth Circuit and the Seventh Circuit, and Wyguide and Corvello, as well as two Eastern District of Virginia courts, has agreed with us. You said what the consideration is the question. Yes. The lower payments under the TPP, all four of those cases agreed with that being consideration, as well as the fact that they. The lower payment is the consideration? The lower payments. They've entered into an agreement for the lower payments. They entered financial documentation. It's not going to be what you think is a consideration for this. It's something else, I'm sure. Well, the appellees, as they have argued, that the Neils essentially agreed to a legal detriment by entering into the lower payment plan agreement. If that's so, that is a form of consideration. So yes, that does support a breach of contract claim, there being consideration of the contract. Who do you think made the promise? Who made the original offer, shall I say? Wells Fargo made the original offer to our client. They have to, the consideration, you're putting the consideration, they're giving up consideration. You have to be giving up consideration if they made the original offer, right? Right. So in Virginia, a very slight advantage to one party or a trifling inconvenience to the other is generally considered consideration. In this case, our client also agreed to undergo credit counseling if requested by Wells Fargo. That is an obligation that they were not obligated to do under the original loan documents. That constitutes consideration, as well as the fact that they made legal representations and the lower payments under the agreement. Were you obligated to fill out other forms as part of this plan? Did you have to supply financial information and fill out other forms or not? Factual question. Initially, they had applied for a first loan modification. At that time, they filled out financial documentation and provided documentation, a hardship letter indicating their circumstances. And that documentation was used for purposes of the trial period plan agreement. Do you know that is actual fact? That is fact. It was rejected. They were rejected for that. And then out of the blue, they get what you call their offer from Wells Fargo. That is correct. It was based upon. It wasn't. They were denied for the first loan modification. Under the terms of the first loan modification, they did not qualify. Right. A different loan modification was based upon the financial information that they had submitted for the first loan modification. The second was. I'm sorry? How do we know that from the record? It indicates that they were pre-approved and the offer letter. It's also put in the complaint. But I thought the offer letter came out of the blue. They hadn't requested it? They did not solicit it. It wasn't signed by Wells Fargo? It just came to them. They were just surprised by it. It was not solicited by them, but Wells Fargo pre-approved them for the trial period plan based upon the financial documentation they had previously provided. Okay. Well, where does it say that? I didn't even know that was your argument. Okay. Where does it say that in the document? I believe it's the very first page of the offer letter. It says we've taken the other documents that you have submitted. And now on the basis of that, we are pre-approving you? Hold on just one moment. It says the monthly trial period payment. Where you are? Joint Appendix, page 77. Okay. Great. Thank you. Okay. Approximately halfway down the page. The monthly trial payments are based upon income information that you previously provided to us. They're also an estimate of what your payment will be if we're able to modify. It indicates on this page also that is on the very first, in the very first full paragraph, that they have enclosed a customized home affordable modification trial period plan. So it was based upon the financial information that they previously provided. If this is a contract, if it is a contract, what point me to the provision that you think means there's a breach of this contract? Do you understand my question? Are you asking which provision specifically we are arguing that they've breached? I think it's clear what I asked. I said if this is a contract, the TPP, you say that's a contract. Yes, Your Honor. What in those documents then would show the new contract, the new loan arrangement as modified was breached? Point me to that exact language if you can. It is, I believe it's two. I'm sorry, section three indicates that they will send a modification agreement. And you say, that's the language I thought you would point to. And so you say they're required to send you a modification agreement if you do the section two requirements and the section one representations. Do you read that? Yes, Your Honor. Do you look at that language in light of the other language? In other words, do you look at that language in context? You know, there seem to be a lot of caveats if you do so and so. If you do so and so, we will modify your agreement. Do you have to look at the other language in the document? I think you do, don't you? Yes, you have to. To know what that means? Yes, in order to determine, one, what that means and also. If that's the case, then how do you win of it being a breach of contract that you did not get the modification agreement in light of all the other language in those documents? Because as we have pled, our client was required to meet certain conditions precedence prior to the loan receiving the permanent modification. And we have pled that our client has met all of those conditions precedence. We mean, that's all set out in three conditions. No, the conditions precedence are set out in one under my representations in part. F, one F specifically says if Linda requires me to obtain credit counseling, I will do so. Two, they became obligated to receive credit counseling if asked. They were also required to give a hardship affidavit and financial information, make certain legal representations. This going back to the breach? Going back to the consideration of it? This is the consideration, yes, Your Honor. The breach is the fact that they misallocated the payment, foreclosed on the home and did not give them a permanent modification. And what remedy is it that you think you're entitled to, not be part of the HAMP program? No, we do not assert that this has anything to do with HAMP, Your Honor. We assert this is a state cause of action independent of HAMP. The remedy is basically. I said the remedy is, so what is the remedy? The remedy is a modification of the agreement. To parallel what HAMP would have done? It's we. What if they modify the agreement now and say, you only make those lower payments one more month and then you got to go back to the original terms? The modified agreement would be a permanent modification that mirrored the temporary modifications under the trial period plan agreement. So those lowered modification agreements, temporary payments, should be reflective of what the permanent modification payments would be. But the property has now been sold, is that correct? I'm sorry? The property has gone to foreclosure, it's been sold. Yes, it has been sold. Wells Fargo was the purchaser. So what is your remedy? Tell me about Virginia law, then. Well, we've also asked for a moved cloud on title. The seller of the property was Wells Fargo and Wells Fargo was also the purchaser of the property. And Wells Fargo owns the property right now? Yes. What about the language in the contract that says that Wells Fargo was not leaving his rights to accelerate the loan? I believe that there are two instances that this trial period plan agreement or trial period plan agreements generally, they all essentially contain very similar language. There are two instances that they approach. One, an individual who has been in default when they enter into the trial period plan agreement and one who is in imminent fear of default. Whenever they say that the acceleration of the note, they're indicating or that language is more indicative of a situation when the individual is in default when they enter into the trial period plan agreement. The contract is able to address both issues. Did your client ever receive a, did not receive, I think, a countersigned copy of the TPP? No, they did not. But in Virginia, that is considered to be a mere formality. As long as the two parties were acting under the contract under the trial period plan agreement, as though it were a contract and all the circumstances surrounding it solidify that, then it's just considered a mere formality. In this instance, they accepted, Wells Fargo accepted all payments that were submitted by the NILS and the NILS submitted every payment that was required in the trial period plan as well. Thank you very much. Thank you. Oh, I'm sorry. I didn't realize you were just, yes. Your Honor, good morning. Justice Shedd, Monson, Nguyen. My name is Christopher Brown. On behalf of the appellants, I'm going to be discussing the three remaining counts that we have on appeal, the slander of title, abusive process, and remove clout on title. This is going to answer some contract questions if we come up with some. I'll take it. Just, I will take it. I would be happy to do so. I think that… We can get to these questions if we don't find there's a contract. I think it's fairly clear, and I think that Ms. Carter was trying to make a point that the specific language, and this is a unique situation. There are services all over the country doing TPP. Let me make sure I get that. Yes. If we found contracts, wouldn't we have to extend this back on the other issues? Yes, you would, Your Honor. So, but that's all dependent on if there's a contract. That is correct. There's really no need for you to discuss anything except to get us to if there's a contract. If there's no contract, then there's no breach by Wells Fargo, and there was, in fact, a default by the Neals, and the foreclosure was a justified remedy exercised under the deed of trust. There's no contract. If there is a contract, we send it back. That is correct. So we don't need to discuss these other issues. All of it back. If the court would be so kind as to send all of it back, yes, absolutely. But the slander of title issues, they're different. Except for the acquired title. Well, see, there are different arguments against them. I believe the removed clout on title may sometimes be a slander of title. A slander of title will always be a clout. That's the distinction there. A clout on title is something that… At page 191 of the Joint Appendix, there is a loan servicing letter, a TPP letter to a Lilly and Nash dated 1-27-2010. Is that relevant to this case? The relevance is we were relying on the Nash case to establish, as Judge O'Grady so wisely held, a servicer may not take a borrower who is not in default, tell them to agree to pay a lower payment. That's the question of law. Why is this document relevant to this case? The language in that TPP. You're just showing they were identical TPPs. We were showing the distinction between a Wells Fargo TPP addressed in Wiseguy and Corvello, and all the other servicers out here who have… What's the critical difference in your mind? The Nash TPP and most other servicer TPPs say, and in the end, the servicer will make a determination on whether or not it feels you should get this modification. Can you point to that language in that 199 document? If you don't take all your time doing it, I thought you would know right off. I know that it says the same things that the Neal TPP says. I didn't ask you that. Very well. If you don't know, just say you don't know right off. You're not talking about JA 199, are you, Your Honor? Yes, I am. It starts at 191. 191. Listen, you don't know.  Don't waste your time looking for it. I know that it's there. I've looked at it countless times. I'm sorry. No, you don't have time to look through it. Well, let me say this. Unlike a Wells Fargo TPP that was viewed in Wyguide, Corvello, and in Neal, the Nash TPP and almost every other servicer out here has this extra line that says, if my financial condition doesn't change, if I make all my payments, if I provide my financial information, if I go to credit counseling if asked, and if the servicer deems I should get a modification. So you say that if that was in the TPP thing here, that you wouldn't have a claim. Is that it? That's correct. As the appeals held in Wyguide and Corvello, since that language is not there, they did not have these. Well, that's such a great argument for you to make because these TPPs are pretty close to me. But in any event, in the Seventh Circuit case, there was a written sign-off by Wells Fargo. Correct. The only difference being. Well, that's a big difference. You don't have any sign-off by the other party. Well, as Ms. Carter pointed out, in Virginia, the law is if both of the parties act pursuant to the contract, it would be a mere formality. It does change. This is why they're trying to raise the statute of limitations issue for the first time on appeal, because it would be treated as an unwritten contract. But the terms are known. Is the state law different in the Seventh Circuit case? Well, I'm not sure. They didn't deal with an unsigned contract in Wyguide, so I'm not sure what the outcome of that argument would have been. But I know that in Virginia it is. Well, whether or not limitations is raised for the first time, it means we can't deal with it. But you have to deal with it someday, right? Yes. I look forward to dealing with it when we get back. But I'll deal with it when the damages are incurred, which in our mind is they continue telling our client, we're reviewing you, we're reviewing you, we're reviewing you, then they foreclose, then we have the damages. Let me ask this question, and I'll point out what the answer is so you can make your argument. Both of these documents seem to be, I'm going to paraphrase, seem to be the same in which your client says, I continue to be true to all material aspects. The lender will provide me with a loan modification agreement as set forth in Section 3. Both the NASH and yours say that, but the conditions in 3 are slightly different. The NASH document says in 3 they add this language, and the lender determines that I qualify. Correct. Correct. And so you say that the lender, that the TPP plan for you is a binding contract because you have met all the obligations you have. Correct. We are pointing directly to the holdings and white guides for fellow holding that. I didn't ask any of that. I asked a question about this case. Yes, the answer is yes, John. I don't think it would be yes. Isn't that your case? Absolutely. The entire case. I don't know why you're talking about everything else. I'm asking you about this case, and doesn't that make your case for you if you're correct? I believe the support of the Seventh and Ninth Circuits helps, but yes, that makes my case. You think what is required. If your contract says that we find it, you think we have to have the Ninth Circuit to agree with us? No, you certainly don't have to, and you certainly don't have to follow what the other circuits say. Do you want to talk about those other courts or do you want to answer the questions I have about this case? Yes. It's because that sentence is not in a Wells Fargo TPP that once you make the payments, they have to give you the permanent month. So now let's look at that. You think that your contract provision that protects you is that, and this is Section 3, which we pointed out just a minute ago, and it says, if I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, here we go, the lender will send me a modification agreement for my signature which will modify my loan documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date. You think that language means they have to modify? It means they will send a modification. Yes. They managed to, okay. Yes, they have to modify. You think it means they have to. Do you have to read that language in the context of the terms of your TPP and documents, not NASH, in terms of yours to see if that really imposes an unconditional liability or obligation? I mean, do you just take that and that's it, or do we have to look at what else the documents say to see what that means? I believe that you need to look at it all, and we reference in the complaint the ambiguity of these contracts. Of course, they're the draft of the contract, and the ambiguity is going to be cited against them and in favor of the deal. So they'll say weird things in certain parts where, if you qualify and this and that, but when it talks about the section that says, this is what you must do, and if you do these things, this is what we will do. We did those things. The Neal's did those things, and Wells Fargo did not do what it said it would do if I did those things. And your remedy to the breach of contract would be what? Specific performance? Yes, it would, absolutely. So the imposition of a loan modification, a permanent mod, with payments consistent with those in the TPP, as the TPP says they will be. And then with the removed cloud on title, remove a trustee's deed with false statements in it, claiming there was a default. All the conditions of the deed of trust haven't been satisfied. The power of sale hasn't been invoked. A foreclosure was conducted. Wells Fargo is the purchaser. We have no bona fide purchaser issues, and they can take title back. And your clients are no longer in the house? They are in the property still, Your Honor. Yes. There were some unlawful detainer cases filed. Well, they brought some unlawful detainer cases, and I believe when the appeal got started that they dropped them in hopes that that might protect them on the abusive process claim. But we can get to that after we go back for breach of contract. Thank you very much. Thank you very much. Good morning. May it please the Court. Amy Owen on behalf of the appellees, Wells Fargo Bank and DWW Law Group. I want to correct one thing that Ms. Carter stated. In paragraph 56 of the complaint, they have represented that Bank of America Funding Corp. is actually the owner of the property. But let's turn to the breach of contract. What I understand is what the court is. Who does own the property? Bank of America Funding Corp. owns the property. It's not Wells Fargo Bank. Wells Fargo Bank is the servicer, but not the owner of the property. Bank of America and Wells Fargo are not owned by each other? No. Not yet. Coming back to the home, CAMP is the Home Affordable Mortgage Program. You heard Ms. Carter say first off that her client was I can understand why we're here on this. I know this is not definitely on the breach of contract. But what happened here? I mean you've got a letter there that pretty much lays it out. However they got it. They got a letter. And you accepted his payments, looked like they went along. There's no dispute. They complied with the PPP. That doesn't seem to be disputed here at all. The only end result is, what do you have to do at the end of it? Do you have to do what that document says, or can you just say, we're going to foreclose and thank you for your payments, and that's the end of it? The document. And help me understand, because what this is about, I noticed this house, I think we pretty much know where this house is located, in Northern Virginia, in Fairfax County. It's worth a whole lot more than what it looks like to me on this paper, probably. I don't know. But the end result being is, there's some property you'd want to foreclose on, some you wouldn't. So someone's made a determination, we don't mind foreclosing and owning this house here, as opposed to taking a negative mortgage down the road with it. But what's going on here? Why would you send such a document, accept payment under this program, and then come in and court says, no contract, we're not going to do anything that we've said in the contract here, because we don't have to. Because it's not a contract. Well, it's not a contract. And there's specific language in here that required us to sign. And there's the reason. Did I put that in the right posture? That basically what you did was sent this document that you say is just a document that throws out all these things you can do. You have to hone on us to pay into this program, under the so-called federal program, to everything. And at the end of it say, ah, we're not going to do it and walk away from it. I know that sounds flippant. Not quite. But really, isn't that exactly what happened here? Well, there's two pieces that are missing from your back scenario. The first is. What about the end result? Is anything missing from the end result? Ah, we're not going to do anything in this time. Yes, there is. If you look at page 89, and this is where I had started to describe the HAMP program and what they're trying to do with the HAMP program, they get the servicers, that's Wells Fargo, to agree to court. Why is that even relevant? It's relevant because. What the HAMP program wants and all, wants your documents. If it's a binding modification, won't that control your obligations? No. Nothing in the HAMP program will control. Well, actually, what I'm trying to get to is that we're talking about a difference between the investor, who actually owns the property, and Wells Fargo, who's the servicer. What we're really getting at, though, is you've got a TPP. And if you're about to explain how these, the rules outside are working, why wouldn't you put that in the document right up front? Now, you can make all these payments you want, and we're not going to do anything for you unless we want to. And we say on page, no, it's not, if you qualify, you have to qualify. And the servicer has to go back to the investor. I have to follow all of the provisions. To qualify, they have to meet certain criteria that are set forth in HAMP. They have to show, they were denied a modification because they didn't have the net present value was such that the investor, not Wells Fargo, the investor wouldn't make money. Is this a modification of their underlying loan agreement? No. Is it a gift? What is it? No, it is a working document to see if they can help them. No, that is, listen, I think you lose ground on that point. Maybe it's not enforceable, and maybe the modification doesn't net what they think. What was their loan payment on the loan before this TPP? Three thousand. Quite what it is now under the TPP? It was $3,600. A month? A month. And what did they pay under this? $2,600. How is that not a modification? You owe us $3,600, but for now, for interim, now for the next period of time, you pay us $2,600. How can you stand up and say that's not a modification? Well, it's not a binding modification. Whoa, whoa, stop. You said it wasn't a modification. So it is a modification. It's not a modification of their loan document. It's an acceptance. I'll take a little bit less. You owe us the full amount. I'll take a little bit less. But that's a modification. To see. Do you have their provision in the loan, underlying loan agreement, that said we can adjust the payment if we want to? Yes. You do? There's a provision that provides that partial payments are not a waiver of the… That's not the same thing. No, no, that's not the same thing as saying for the… No, it's not the same thing. If the mortgage company calls you and says, you owe us $2,000 a month, but for the next three months, we know times are tough, we'll take $1,000. That is a modification. How could it be anything other? The question is, is it enforceable and what is next? Those are separate questions. But you answered it both ways. Is this a modification of the underlying loan agreement? No. Absolutely not. Okay. How can it not be? Does this establish the relationship between the parties that their loan payment is now different than it was before this letter? It's not a modification. A TPP is temporary. That's by the whole view of it. It might be a temporary modification. But at any rate, I don't see how you can stand in front of the court and say it's not a modification. It modifies the amount of money you have to pay on your monthly mortgage payment. How is that not a… Is it a gift? Temporarily. Is your problem the temporariness? It's temporary. All we've agreed is to forbear temporary. So it's not a modification. It's not as a legal term. As a legal term, it's not a modification of the loan documents, but it is a forbearance for three months of your full amount of your payment. That's not a permanent. Is there any argument, isn't it undisputed that they made payments, three months payments? They made three months payments. And then they made seven additional payments. They made additional payments. Now they allege there are some oral transactions and we won't talk about that. But no matter what we call it, why hasn't Wells Fargo, by accepting their payments, consented to this contract? Because, first of all, there's no consideration. The amounts were due, and I think we talked about that a little bit earlier. The only allegation in the complaint, the allegation in the complaint is they had already provided financial information. So they did nothing, essentially. Well, they say that they agreed to credit count. In the future. So there was actually no act. If we had signed it, that would have been binding on them, but we didn't sign it. Wait a second. No, no, no. You can have a contract where somebody says, I'll pay you $100 if you cut my grass next week. You can have, that's a contract. For something to be done in the future. Why is that not a contract? That's exactly right. Because it's in the future, I think that might be called a promissory contract. I want to turn, if I could turn the court back to Golding. Before you leave from there, I want to get back to the HAMP modification. Because you brought that up. You said a qualifying event, a three qualifying event. But it seems to me, that you have to have HAMP, after you get HAMP, the initial three steps, isn't there a couple more steps that have to happen? That's when you bring in a TPP. You first meet the first three, and if you meet that 31% and all that, net value and waterfall thing, then we will send you a TPP. Isn't that what the supplemental record, regulations indicate? No, the regulations allowed you to begin that process, even without having verified it all. Okay, let me make sure I get, because that's important. So you're saying, the HAMP qualification hadn't even been established. The HAMP decision certainly hadn't been made. Because the investor has to make that decision. The regulations look like to me, you have to establish those first. I mean, why would you? Why would a service do any of this? Why would you send someone a TPP, if you haven't already decided you are qualified under HAMP? Which it looks like, that's what the regulations say. It says, look, see if you're qualified under HAMP, and those that meet that initial threshold requirement, now we will send you a TPP. And then the second step of that, is the qualifications as to whether you meet that. And if you do those steps, and meet what's there, you then get a modification. And the threshold requirements would be, that their loan was made prior to January 2009, which it was on its face, that it's their primary residence, which they represented it as. For me, that's where I'm trying to make sure I get clarification on. I don't know this. I mean, I don't know this area, so that's what I'm getting clarification on. Because as I read it, that's what you did initially. Before you would send a TPP, you would make those threshold requirements determination. You wouldn't send it to everybody. You wouldn't let just anybody out of the blue be under a trial period for a loan modification of reducing a payment, if you had already determined they meet the threshold requirements for HAMP. Right? Yes, we would not send something to a loan that was made after January 1, 2009. I understand that. But aren't there three steps under HAMP? There are. And you would not send a TPP to someone who did not meet those initial three-step qualifications for HAMP. That's a preliminary determination. Right? You could. Or wrong. Well, you might. You don't. You give them an opportunity to provide more information. So the final decision has to be made. So if you follow that, then anybody could get it. If you didn't need to make those three initial, what I call qualifying events for HAMP, then anybody could get a TPP. Right? I mean, and it would be just at the whim of, I don't think the regulations read that way, at least the way I'm looking at it, but I'll look at them closely. And that's why I'm asking you. You're the expert on this. Yes. So I'm asking you as to where this is going. But it just logically seems that a servicer would look at those first three, which you can make pretty quickly. That's not something the borrower has to do up front, to look to see if they're 31 percent, to see if there's a waterfall in here that you're going to benefit similarly here with a foreclosure, or that you've got the net value. Those seem to be preliminary determinations. And then once you've got the HAMP determination, you then send them a TPP if you choose, I assume. Isn't that the way it works, or is that not the way it works? There's a little more flexibility in that, because even if you're, some things you can't get around if you're a loaner after 2009. Determining the 31 percent, or is it all, or where's that flexibility? What are those three steps that the flexibility is? It comes in with the monthly income and the obligations. So when the HAMP denial... 31 percent? If you turn to page 89, I think it is. I want to look just at the... It gives a specific information. It's what I'm looking at. Is it the 31 percent that you have flexibility in? You have flexibility if the borrower has more information to suggest that, in fact, their income is higher or their obligations are lower. Let me ask one last question, because maybe this is not necessary. Is there any allegation they did not meet any of those HAMP modifications? Is that the 31 percent? Is that your content, they didn't meet the 31 percent? They didn't meet the NPV test, and that's what I wanted to point you back to. And the NPV is based on your monthly income and the borrower's income. And how this works is the INVEST does not have to accept the modification if the NPV value is... So you say they didn't meet the NPV to qualify for the HAMP? Yes. So if they didn't meet the NPV test, then they don't get a TPP. So it's not a question of whether it's a contract. You just shouldn't have sent them more. No, because they could have provided... They have took the position they haven't even had a default. They could have provided more information to suggest that the NPV value was incorrect. Do you normally make the determination of the NPV test before you send a TPP? Not always, because there's some... That's not my question. Do you normally do that? I can't speak for how Wells Fargo always treats it. I can tell you that under the reg... But the regulations are saying that you should do that. And gives you flexibility that if it appears... It doesn't sort of follow. That would be... I mean, you wouldn't run into this problem of sending a borrower a TPP if you did those three things up front. Then you wouldn't come back later on and says, well, I know I said in this letter all of these things that are going to happen. And they're pretty direct statements. We shall, we will, we must, and all of this. It's all in there. You wouldn't send that if you already knew that you didn't make the threshold three requirements for him. And it looks like the regulation says make the three threshold requirements. And then, if you're satisfied, send a TPP. It has all of that language in it. And guess what? You probably would want to do it then. Because you wouldn't know. You would send the document. Isn't it true? The plaintiff stood up, the appellant stood up and said, their relief is not to be part of the HAMP program. Isn't that what they said? Well, they're asking for essentially the same thing. A permanent modification. I didn't ask you that. No, you're right. They didn't say they didn't want to be part of the HAMP program. That's right. So doesn't the question come down to whether you should have, whether you didn't, whatever. They can't be a part of the HAMP program. But you did send the TPP. So then the question, what does the TPP bind you to do? Isn't that correct? Is that the question? Yes, if it were binding, it would be HAMP. Now, the document at 191, the Nash letter, do you think that's relevant, yes or no? No. Okay. Now, let's go to the provision. You heard them say the specific language they think binds you to a modification agreement, right? Under section 3. You with me? Yes. And that language says, if I, this is bottom page 82, if I comply with reading over to 83, the requirements in section 2 and my representations in section 1 continue to be true in all material respects. Here's the language. The lender will send me a modification agreement for my signature, which will modify my loan documents. Now, why they say that's the language that binds you under the TPP, except for a second, just except for the purpose of my argument, that the TPP is a binding document. A temporary, at that point, a temporary modification of the contract. But if you accept that as a binding modification, why don't they win under that language? Because you have to read this document as a whole. All right. Then point to the one or two strongest provisions in these documents that say that is not quite what it appears to be. First of all, on 81, step 1 of a two-step documentation process. I know I've read that before, but I can't find it right now. Second paragraph. I understand that after I sign and return two copies of the plan to the lender, the lender will send me a signed copy of this plan if I qualify for the offer. Yeah, I know that. But the if I qualify, section 3 says, if you do everything, you do all that, you do qualify. They didn't put another qualification in there. That's their argument. See, you have to be careful of saying if I qualify. They believe that, number one, if I'm in compliance, they will amend the mortgage. See that first paragraph? And the only thing, if they are, if I'm in compliance with the loan trial period, which they were, they say, and my representations in section 1 continue to be true, then the lender will provide me a loan modification agreement set forth in 3. Those are what qualifies them for the modification. So that doesn't say anything. If I qualify, they say you've already set out how they qualify and they meet it. So what's your next best plan? Is there another? Well, I think it's clearly part of the HAMP plan, a step one of the two-step documentation program. You said you had to look at all these documents and I said point me to the strongest information, one or two, I'll give you now two or three, that show that their interpretation or our interpretation of that language under section 3 is not what it appears to be. Is there any? Well, I hate to make you look through it. I know I'm looking at my phone. But you better tell me. At least for me, you better tell me. I believe that there is, Your Honor, and I think we pointed out in our brief various sections of it. If you just want to rest on your brief on that. I will rest on it, Your Honor. Okay. I don't want to take any more time on that issue. I want to come back to the other three counts because I don't agree with the court, even if you were to send it back. Come back to what? Come back to the last three counts. Even if the court, for some reason, found there was a contract, I know we haven't talked about the statute of limitations, we can rest on our brief on that. That's a good consideration. I think Judge Hilton got that right. On the counts two, three, and four, there are no causes of action. The abuse of process, the process that's identified an abusive process would be some kind of statutory process. This was a non-judicial foreclosure sale. It occurred. There's no act that they allege after the foreclosure sale that would be at issue. On the slander of title, again, the trustee's deed was not attached to the amended complaint. I don't think that that count can survive. What does the time is of essence language in that document that you talked about mean? In the, coming back to the TVP? Yes. Time is of the essence because if they don't make any payments, then we won't even be able to look at them for a modification and try to help them at all. We need to hear back from that. Time is of essence for them, but not for you. I mean, I analogize it, and I don't mean to de-minimize. This is a difficult situation for them to say that they couldn't afford their home. How long did it take you to tell them they didn't qualify? Well, we didn't give them a plan in February, and we kept looking. So, it was in September of 2010, and then, frankly, they looked for another... How long was that? That was seven months. Seven months and the three that they'd already... Right. So, it's 10 months old. And then, even after we denied it, we looked for, even in their complaint, I've forgotten what allegation it is. They admit Wells Fargo kept looking for a modification. These folks were not able to make the payments on their home. The only situation you've had this in? I mean, I would think you probably would have had a few more actions on cases like this, if this is the way you do business. Well, Your Honor, Wells Fargo is doing its best to help people that claim that they are not able to afford their mortgages, and these folks... I know that legal arguments are here, but reading this TPP really is disconcerting to anyone who's reading it and knowing the basis under which it's here. Let's say you're doing everything you can to help people who have complied completely with the TPP, but as I understand your argument today, it's not the TPP that's the problem, it's the HAMP qualification and that's because of the NPV. Well, that's why they didn't receive the HAMP modification, because of the NPV. But you send TPPs to folks that don't get HAMP modification. Of course, it happens. Can't you modify a contract? Can't one party offer a modification to the other party and go, I want to modify our agreement for three months. You pay me less, but at the end of that time, if you haven't figured out a way to pay me off, I can put you in default. Is that permitted if both parties agree to it? If both parties agree and we have a signed agreement, which we don't have in this case. You don't have to. I think I've gone, I apologize, I think I've gone over the time it's going back up. But you have a TPP that's been complete, what do you call TPP? What is that to you? What is it? Don't call it a plan. What is it in contract parlance? Is it a contract? Is it a gift? What is it? In my view, it's an offer to the borrower. Wells Fargo is almost... It's an offer to the borrower. So, for example, you're applying for college and they tell you what the requirements are. No, no, no. I don't mean for instance. So, when you talk about the underlying loan documents, those loan documents, they're not between the borrower and anybody else, are they? They're between these two parties. Right? The loan documents... The loan documents, they are between the appellant and the FLE, aren't they? No. The loan documents are actually between the investor and the borrower. And Wells Fargo is the servicer of the loan documents. So then, if you... They're not here today, they weren't serviced. If you're bound under this modification, you say, we lost, but we don't have to do a thing. Investor, you have to do it. If Wells Fargo loses, it'll be on Wells Fargo to sort something out. I don't know what that will be. Well, so, but Wells Fargo has... Does Wells Fargo have any authority  Yes. They have authority based on investor guidance. So, they're acting as an agent for the investor? Yes. Okay. So, in other words, if they make it, then if you lose, if you were to lose, I'm not saying you are, but if you were, then the investor will have to modify the loan arrangement. I don't know... If you lose. I don't know that the... whether the investor would have to modify it, or if Wells Fargo would have to take the loan. Okay. Well, we're not talking about the investors here because we're talking about service participation agreements. Exactly. That's why we're dealing with Wells Fargo here. Right. The whole basis for this is you have this authority. You can do all of these things here. It's the manner in which you did it that's of consideration to the court today. And the question is whether did you form a contract? And you said it was an offer. It looks like to me you said it was an offer. Did you say it was an offer? The TPP was an offer? No, for the borrowers. The borrowers are offering, I'm turning in these payments, will you modify my loan? And Wells Fargo is saying... Is the TPP a piece of paper that you say is their offer? I don't know. You say that... Yes, when they signed, we didn't sign it. The Neals are offering... The Neals are offering... Okay, let's assume that that is correct for just a moment. But just assuming that's correct, then, okay, so the Neals offered Wells Fargo this and Wells Fargo accepts the offer by taking less money for the loan than it is entitled to do because it's operating under this offer that they got from the borrower. Right? So there was consideration there. That's not consideration, paying less than what you're due. No, but it is... It sure is. Listen, that's a brilliant question. Quite frankly, you said it's an offer from the Neals. Well, we don't need to worry about them. Take it back to Judge Moss's first question, I think. Offer acceptance consideration. They made the offer to you and you accepted it by giving up valid payments. We didn't give up any payments. Yes, you did. We agreed to temporarily hold payments. Temporarily giving up. You didn't have to use that money for those three months. You were giving that up. That's not consideration. That's not consideration because I thought it was the other way around. Wells Fargo make an offer. You now say, is Wells Fargo making an offer and when they start doing it in consistency with their offer and Wells Fargo take those payments, you've shifted the consideration. Wells Fargo sends them this document and says, if you want us to even consider it, you do this. And if you qualify, we'll sign a document. You sign, we sign. That is one heck of an offer though when you type it up and send it to the person and go, make this offer to us. We would love to take it from you. Take the offer. And they do just what you asked them to do. They made the offer. And you take their money. And you say, it's their offer, which I'm saying the Seventh Circuit, I think, went the other way. The offer came from the bank. But you say the offer... The bank is... The bank offers to... Essentially, the bank offers to work with you. You come back to them and say, okay, here's what I can do. ...contract as to who makes the offer. I mean, that's why... Again, it's... ...it's bouncing around. It's not, well, whatever. It really is important who made this offer. And it's not a contract. ...considerations would love. Yeah. So your language that says whether or not you qualify for the offer, send me a written notice that I do not qualify for the offer. You think that means the same thing that I'm not qualified to make you an offer? I think we're talking about two different offers. We're offering to you, if you want to apply to our plan, here's what you do. Well, I'm reading it right out of your document. Right. And that's our offer to you. If you want to participate in the plan, here are the documents and what you should sign and send back to us. I didn't think you said the offer was from them to you. Then they offer back to you. Okay, here's what we have. And you... Was it a channel offer? We did accept. What do you mean an offer back? Again, it's not a contract. There's no consideration for the whole thing. They haven't paid... Your bank made an offer and then they made an offer. What we... Based upon the offer you just made. Well, we didn't... It looks exactly like your offer. I think we're, like, talking in circulars. No, no. It's not a... We're not talking in circulars. We're just trying to understand what this document is here. And, but you started... You brought up that they made the offer business. I did. Because it's going back and forth. They're negotiating. We'll try to help you. And I know I can see the court is a little frustrated with probably all of the banks on this.  We'll try to explain how it is... What's your argument here? Because, you know, it's offer, consideration. The argument... Offer, acceptance, consideration. Those are the three... All right. So we'll go back to the beginning. We've offered to you that we'll talk to you about modification. We have this program that we're allowed to work within. Let me... Let us send it to you. If you qualify, if you do all these things the investor accepts, then we can modify your loan. You send back the information and she said, this is the information I have to offer. This is what I have. There's some payments. Then we say, okay, well, you don't qualify.    If we don't sign the agreement... It's between. You offer. They offer back. We don't sign the agreement. It's between. It's between. It's between. You offer back. In between that, they've taken your money at this lesser thing. That's where I sort of get hung up. Because if in fact, as you said at one point, the borrower, the people that are the homeowners are in fact making an offer. They're saying, we're going to do all these things. They're saying, we want to modify. Yeah, we want to modify. Because we're going to default on our loan. We'll do all these things. And you take their money under this modified plan, temporarily to be sure. But you don't have the use. Banks are all about use of the money, right? You don't have the use of that money for 10 months. You keep taking it, and they keep thinking they have a contract. But it can't be consideration where I'm taking less than what you owe. Sure it can. Because you owe the full amount. It's consideration for you. If the court took that position, that every time someone defaults on the loan, and they start to try to minimize their losses or mitigate their damages... And the bank agreed to it. Right. Then they have a new contract. But the underlying documents specifically say, a partial payment doesn't waive our right to enforce these loan documents. And those documents are signed by both parties. But we're talking about temporary, right? Remember, because you were heavily into temporary. Well, what would your damages be, then, at that point? For the consideration of this, they didn't qualify for HAMP. They admit they didn't qualify for HAMP. They don't even challenge that they didn't qualify for HAMP. I suspect the damages would be something like this. You owe them that deal. You didn't give it to them. They lost their home or they're going to lose their home. You owe them the damages for the breach of contract. And that would be... They could have sold their home during those 10 months. Right. At a higher price than the mortgage. Actually, they could have for several months. But they didn't put it on the market. Sorry? They didn't... Right, they didn't put it on the market. There's no allegation. I thought they were going to get a modified loan. Well, actually, they were turned down. I think that would have been evidence in your favor if they had put it on the market. So, coming back quickly to statute of limitations, they had known. And they claimed that the breach happened... You didn't make your limitations argument below, but you didn't make it originally below, did you? It won't... It's the same effect, though, Your Honor. If the court finds that there's some kind of... If she is, did you make it below? Oh, no, we didn't. Because the court simply said, no consideration. But did you make it at all? We argued that there was no contract. So, no, we didn't raise it. Did you make a limitations argument? No. Any other questions? You could be here all day. You have two minutes to say anything you want to. I want to come back again and remind you all that this is an interesting situation, I understand, for the court. But the Golding v. Floyd, a Virginia case, specifically talks about that execution is a condition precedent. And clearly, execution of these documents was an important item. It's in here. It's throughout. So, I disagree with their point that they think that execution is not important. Again, we have to... If the court even found there was a contract, we have to talk about what exactly they claim was wrong. There's no allegation in the amended complaint that the decision under HAMP was incorrect. There's no guarantee of a permanent loan. And they admit that we try to find other modifications for them. Paragraph 72, they attempted, we attempted, and we weren't able to do it. And again, I want to remind the court that counts 2, 3, and 4 simply don't survive regardless of whether the court finds there was some type of implied contract in this case. Thank you for your time. Thank you very much. Do you have any rebuttal? Rebuttal, Your Honor. I would like to initially make the point that Wells Fargo ceased accepting payments. It was not that my client ever stopped submitting payments to Wells Fargo. Also, the NPV value. Your client ultimately did, as I understand it. Ultimately did. Stopped making payments. That client is making payments today? No, Wells Fargo no longer would accept them. They were submitting them and then Wells Fargo stopped accepting them, was sending them back, would not let them, and that's pledged in the claim. That was at the end of this 10 months after the, is that what you're saying? Yes, Your Honor. The NPV value that she indicated, so that's why we didn't, get the permanent modification because of the NPV value calculation. The document that she referenced to, you can look on it, it actually indicates the NPV value was calculated prior to them offering the TPP to our client. Indicating that the NPV value calculation had no impact on them offering the trial period plan agreement, which indicated they would get the permanent modification. Does that matter anyway to your argument? No. I'm just arguing on the document. Now, who offered who what in your view? If you actually look at the first page of the trial period plan agreement, it says Wells Fargo is the lender. And is that your argument? That Wells Fargo offered the trial period plan agreement. Who do you think made the offer? Wells Fargo made the offer. Then you understand that your consideration is the problem then. I'm sorry? I want to hear your best argument on consideration. What's your best argument that you gave consideration to accept that offer? The best argument is it was a unilateral contract. They indicated certain things had to be done. Those certain things were completed. The credit counseling, they agreed to undergo credit counseling if they were asked to do so. That was an obligation outside of the original loan document. Is that the best argument that you would agree to get credit counseling if they asked? Is that the strongest consideration? That's following with the Ninth and the Seventh Circuits. Is that your strongest argument for consideration? The legal detriment under the contract that they had to submit the lower payment would also be consideration. Is that a legal detriment? If they had to submit a lower payment under the contract, yes, it is because they agreed in their brief they state that when they agreed to submit the lower payment that they also agreed that it would be reporting to their credit bureaus negatively on their account during that time frame. That's a legal detriment. Does it say that in the contract? The asserted contract? It says that not in the actual contract. In the offer letter it states that it would affect their credit which the offer letter is not technically part of the contract. It's not incorporated into the contract. The legal argument that I can't quite hear what you said. It says what? It says in the offer letter that was attached to the trial period plan agreement it states that during the trial period plan that the payments that they make that are less than their regular loan payments it will reflect on their credit report negatively. What it says is in the offer letter page 79 during the trial period we will report your loan as delinquent to the credit reporting agencies even if you make your trial period payments on time. Yes. Right. So you say your consideration was allowing to be called delinquent although you weren't delinquent under your modified agreement with them. Correct. Correct. Also I would like to So those are the two things? Yes. Also the financial Are there any other is there any other considerations? The financial documentation that was to be submitted the legal representations that were to be made Was that submitted before or after? It was submitted before but the financial documentation that they submitted they had to make certain legal representations regarding that that that was not going to change. Any of the information included in the financial documentation wasn't going to change. Wait a second now I'm having a little trouble hearing you. You had to do something as far as financial information? What did you have to do? Originally the first loan Now let's talk about once you started this DPP What did you have to do? What's the consideration for the TPP? Make legal representations regarding the previous financial documentation indicating that it would not change and if it did change they would inform them. Also the credit counseling they had to agree to undergo the credit counseling. We got that. We got that. Okay. So the other thing is you had to make a representation that your documents were accurate. Yes. Yes. That is correct. And this is also going back to the trial period plan agreement I know that you had indicated if that was relevant or not. I actually believe that that is extremely relevant to this case. For the pure instance that it shows the distinction between this trial period plan agreement and trial period plan agreements that are generally used in the industry. Wells Fargo has made it What does that net you? That doesn't net you anything if the whole agreement makes it clear they aren't bound to do this is conditional. What does that net? It's more it's more clear language. But I think it sort of goes both ways. Right. It could mean that the industry standard is that you don't do what's being done in this what you say is being done in this contract which suggests that you've misread the contract. No. The industry standard is that you do you do have to qualify for the lender. Right. What the NASH trial period plan agreement actually indicates is not so much the consideration but what they're required to do after the my client has fulfilled all of the conditions precedent. And that is go through and offer them a permanent modification. For instance, the NASH modification or trial period plan agreement indicated that the lender or the servicer still has subjective they retain subjective determination. So they can still make a determination at any point. But I still don't understand why it's relevant quite frankly. Is somehow does that modify the offer in your agreement with Wells Fargo do you think? No. Does this at one does the NASH letter does that in any way how does that help us understand whether or not you have a contract under the language of these couple papers? It does not. The NASH agreement was relied upon or NASH was cited and it was cited by the lower court. The lower court indicated that whenever I believe that the reason they were dismissing it is because you a borrower cannot say that permanent modification is to be granted under a trial period plan agreement. So the reason the distinction that is made is I submitted the NASH trial period plan agreement to show why it was not even requested that the borrower receive a permanent modification in that case. Because the language differs and that language indicated in NASH that they still retain subjective determination. They could determine it on MPVs on whatever it is that they didn't qualify. I want to distinguish NASH. We aren't going to make a case that rises or falls on the language of your offeror acceptance contract. Right. Doesn't it? This, that page and anything else that has to be considered with it. Basically 77 or some part of that through 83 or 4, right? Correct, Your Honor. Okay. And we'll find the answer to our questions in those pages. Correct, Your Honor. And that differs because it says that a permanent modification if they fulfill certain conditions preceded, which we have pled that our client fulfill those conditions. Is there any more questions? No. Thank you for your time. Thank you so much. We will come down and greet the lawyers and then take a brief
judges: Diana Gribbon Motz, Dennis W. Shedd, James A. Wynn, Jr.